## JOHN GRAVINSTON v. JOHN FREEMAN.

Supreme Court. Kent. March, 1796.

*Wilson's Red Book, 121.*[*]

*Fisher* and *Miller* for plaintiff.   *Ridgely* for defendant.

This was an action of assumpsit commenced by the plaintiff, assignee, against defendant, assignor of a bond, on which the assignee had failed in recovering the money, the obligor being insolvent.  The declaration contained two counts, the first specially stating the circumstances of the case, the other was for money had and received.

It appeared in evidence that the plaintiff in the summer of the year 1792 had sold to defendant a chaise, that in consideration thereof the defendant on the 13th October, 1792, assigned (according to the Act of Assembly, 1 Body Laws 87) to the plaintiff a bond given to the defendant by a certain Mark McCall on

---

[*] This case is also reported in *Clayton's Notebook, 11,* where the plaintiff's name is spelled "Gavinston."

the 8th October, 1792, for £33.11.2, payable January 1, 1793. That the bond, after the assignment, was left in the possession of the assignor and by him put into the hands of an attorney two or three weeks before it became due, with directions from defendant not to proceed till ordered by him, saying there would be a probability of recovering the money by attachment from one of the debtors of the obligor; that the February term elapsed without any proceedings against the obligor; that the assignee came from Philadelphia in the spring of 1793, and then, to wit, the 20th April, 1793, the judgment was entered up and a *fieri facias* issued returnable to May, 1793, on which the sheriff returned "goods all sold and not sufficient to satisfy prior executions"; that in July of the same year the assignee took the bond to Philadelphia to see if a recovery could be had there from any property that might belong to the obligor of the said bond. That to December Term, 1793, an attachment, *fieri facias,* issued on which the sheriff returned *nulla bona.* That one of the witnesses believed the obligor was insolvent at or before the assignment.

To this evidence defendant demurred.

*Ridgely* for demurrant argued that there was by this assignment no express agreement on the part of the defendant to pay the amount of the bond in case the plaintiff did not recover it of the obligor; and if in point of law there was an agreement to pay on such default, it arose out of the covenant created by the word "assign," and that therefore if any action would lie by the plaintiff against the defendant, it would be covenant and not assumpsit, which was the first objection, and to aid this doctrine he cited Gilb.Evid. 183 and Bull.N.P. 128 to show that *indebitatus assumpsit* will not lie on a specialty and Cro.Jac. 505, 506 and Doug. 5 to the same point; and alleged that covenant under hand and seal was of an higher nature than assumpsit, 2 Str. 1027, Cro.Jac. 598. He insisted that if the defendant had entered into any express agreement with the plaintiff then an action would lie on the special promise, 2 Bl.R. 1269, 2 Term 479.

Second objection: Though the action had been covenant, the defendant is not bound to pay the money to the plaintiff in case of deficiency in obligor, the word "assignment," from which the covenant, if any, would arise being only an agreement by the assignor that the assignee should receive the money from the obligor to his own use. 1 Freem. 368, 1 Ld.Raym. 683, [1] Dall. 444, 449. And that no action has ever been brought in England by the [assignee] [1] of a bond, which he insisted upon as a strong argument that no action whatever would lie. And there being

1 Manuscript reads, "assignor."

no law in this state under which a recovery can be had in this case, the deduction therefore clearly is that there can be no recovery.

Third objection: There has been a delay by the assignee from the first day of January, 1793, to April 20th following (by which the February Term elapsed) in proceeding against the obligor. Considering it upon the principle of promissory notes in England, the plaintiff must have taken the bond at his own risk. For every promissory note is at the risk of the party to whom indorsed, as in the case of *Pepys v. Sir John Lambert,* 1 Str. 707, where the third indorsee of a promissory note kept it from the first day of November to the 7th of January without receiving it of the maker of the note; and in an action against the first indorsee without notice, the plaintiff was nonsuited for his neglect. In this case it was necessary for the assignee to use legal measures as soon as the bond became due for the recovery of the money; he did not, and therefore ought to suffer for his own laches, 1 Esp.N.P. 50, 54, 55.

Fourth objection: One of the plaintiff's witnesses said plaintiff took the bond of the defendant as pay or part pay, and, that being the case, the person receiving it as such ought not now to resort to the person by whom the assignment was made, Doug. 235. *Dingwall v. Dunster* [Doug. 247], 4 Term 687, Cowp. 818, Doug. 18.

Fifth objection: It was strongly contended that the counts in the declaration were bad, the first for the reasons already offered under the first objection, and the second because in this case no money had actually been received, which ought to be the case to support a count for money had and received; 5 Burr. 2593, *Nightingale et al. v. Devisme,* where the court declared such a count was not good to recover East India stock though convertible into money.

*Miller* and *Fisher,* for plaintiff. The assignment was not considered as the foundation of the action but as a document collateral to it and tending to illustrate a right of recovery in the plaintiff, and not as the immediate ground of action. Assumpsit is the proper remedy for the plaintiff, for if there be no positive law to authorize the action which is brought, yet the principles of the common law operating upon the statement of circumstances made in the declaration will raise and support an assumpsit in the plaintiff's favor. That the defendant had received valuable consideration was apparent from the assignment and therefore was under a moral duty to refund and pay the plaintiff the value of that consideration, which was the ground

and would support the present suit: Cowp. 290, 294, 2 Burr. 1012. Assumpsit will also lie for a consideration which happens to fail. 1 Term 732, 733, 734. It will lie to recover the purchase money, when no law can be found as described in the deed. [1] Dall. 429.

At common law bonds are not assignable. The Act of Assembly, by which they are made so, intended they should be to answer the purposes of commerce upon the footing of promissory notes in England. Though in England an assignment of a bill payable to J. S. or bearer be no good assignment to charge the drawer with an action on the bill, yet it is good between indorser and indorsee, 1 Salk. 125.

In assumpsit, deeds and other writings may be given in evidence not as the immediate foundation of the suit, but leading [evidence], 1 Pow.Con. 219, 220, [1] Dall. 429, 430.

It is of the utmost importance to the United States aggregately and individually, that the judiciary tribunals of the union as well as those of the states respectively should harmonize in their determinations upon points accompanied by an identity of circumstances, in order that the common law may be the same throughout the whole. The Common Pleas in Charleston, 4 Am. Mus. 275, determined in a similar case for the assignee against the assignor.

April 3rd (*Absente* ROBINSON, J.)

READ, C. J. On the demurrer in this action to the evidence of the plaintiff, the Court, having considered the arguments on both sides, and particularly those on the part of the demurrant, are of opinion that the first count is defective and the second good. They are also of the opinion that the specialty and indorsement given in evidence were rightfully, and that they are collateral to the suit. That in the assignment the assignor had expressed that he had received value equal to the sum mentioned in the condition of the obligation, which accords with the case in [1] Dall. 429, 430 cited by plaintiff.

As to the second point urged by demurrant, to wit that if an action lay, it ought to be covenant, the Court said they do not consider the assignment as the ground of the suit, but as collateral to it. As to the point that the count for money had and received was an improper one, the Court under the circumstances of the case think otherwise, that the indorsement made on the back of the bond was an admission by the assignor that he had received so much money for the use of the assignee, although this is a contract for a carriage and no evidence has been given

that the assignment was in full therefor. The Court conceive that the second count is warranted by the case of *Ward and Evans,* 6 Mod. 36, and that the objection to the second count was thereby well answered. It has been determined in two cases in the State of Pennsylvania ([1] Dall. 23 and 443) that the covenant implied by the word "assign" extends only to this, that if the assignee received the money it was to his own use, and if the obligee receive it, it was for the use of the assignee. The Act for Assigning Specialties is in nearly the same words with the Pennsylvania Act. The remedy here taken is not under the Act of Assembly [1 Body Laws 87] but at common law, 2 Bl.Comm. 464, 469. The remedy here taken is sanctioned by the common law and grounded on its principles. The defendant is a person who receives something for which he makes a payment, and, if that payment fails, he ought to make such compensation as will make that good the consideration for which has failed. In this case it seems to have been the opinion of the assignor, by his own conduct, that the obligor was not good for the money. By the evidence it appears to the Court, that the assignor delivered the bond himself into the hands of the counsel who proceeded on it, and therefore the argument of the demurrant on the want of due diligence by the plaintiff in his proceedings is fully answered. As to the fourth point, that is answered by the Court's answers to the other points. The assignment was undoubtedly received in discharge of the debt, but at the same time created an obligation on the defendant to discharge the amount to the plaintiff if the consideration failed.

The legislature intended to encourage trade and commerce by making bonds and bills assignable. The difference between bills of exchange in England and the bonds and specialties made assignable in this country is but nominal. It was contended by the counsel for the plaintiff that the similarity of this case with cases of promissory notes in England was very striking; they were certainly not aware that this doctrine would impose upon them the same proceedings and principles as are incident to promissory notes and bills of exchange in that country. However, the Court are of opinion that under the circumstances of the case there was sufficient to warrant the delay of the proceedings by the plaintiff against the obligor; and that judgment be given for the plaintiff on the second count.

CLAYTON, J., accordant.

The docket entry is thus:

> Demurrer on the part of defendant to the evidence, with a conditional verdict after annexed on solemn argument of

their demurrer by the counsel in this cause. The Court are of opinion against the demurrant on the second count in the declaration in this cause and therefore give judgment in favor of the plaintiff on the second count for the sum found in the conditional verdict of the jury as annexed to the demurrer aforesaid, to wit the sum of forty pounds eleven shillings and fourpence with costs, and it is considered also by the court that the said plaintiff be in mercy for the defective count as first stated in the declaration aforesaid and the said John Freeman do go thereof without day etc.